Regency Management Inc. 24-10283. Thank you. Thank you. Thank you.  It's time for rebuttal. Members of the Court, I'm Landis Sexton. I represent Bill and Angie Austin in this case. It's an appeal, as you know, of a dismissal of a complaint in a fraud case. I'm going to skip the facts because I know you're familiar with them. I want to talk about how we perceive the trial court error. The trial court erred by taking a version of our complaint mostly from the defendant's argument rather than what the complaint actually said. And the trial court really misperceived just what we wrote. Can I ask you a tiny question just off the bat? Yes. In crafting the timeline in my head, there's one piece of the puzzle that I can't figure out. When did Hitch make the alleged misrepresentation that the Austins could not do a walkthrough of the home? Was it before or after your client signed the purchase agreement? Most of them were before. There is, we allege in the complaint, four separate occasions when Ms. Hitch would not permit them to go see, wouldn't let them go see the property and used the explanation that she couldn't obtain access to it or that the regency management and regency, the brokerage for business, couldn't obtain, they just couldn't get access to it so that you just can't go see it. So some of the times occurred before they signed the purchase agreement and then there was at least one time after they signed the purchase agreement? That's exactly right. So in light of that, so the Austins are interested in purchasing this home. They contract as their real estate agent, Hitch, and Hitch says you cannot do a walkthrough. There's a tenant on the property. But your clients went ahead and signed a purchase agreement that provided for as is. How were your clients not acquiescing by signing the purchase agreement, which is as is, and the fact that they weren't, they argued with that purchase agreement, weren't getting the right to inspect? Your Honor, when we wrote this complaint and decided to proceed with this case and talked to the plaintiffs about this case, we knew from the beginning that as is, I knew that I was always going to be having this discussion with somebody, either the trial court or y'all or both. The complaint is pled, when you read it and see it, specifically to address the issue of as is and specifically to not get into the field of operation of that doctor. Okay. Caveat emptor is the broader field of operation, and it burden shifts the duty of inspection and care to the buyer to say that you got to look into what you're buying in a general way. There is an exception to caveat emptor, which says even though the burden shifts to the buyer, in cases where there's health and safety concerns, there's an exception that the person making the representations has to be accurate if the representations concern the property and it's about health and safety. Okay. So caveat emptor is up here. It's the broad thing. Then there's an exception to it. As is is a particularized concept related to contract law, related to contracts within caveat emptor. And what it does is it says, okay, here you got caveat emptor, says buyer beware, you know, burden's on you. Then there's an exception. As is eliminates the exception. That is the field of operation of as is. It makes it where the exception for the health and safety doesn't matter anymore when the defendants are making representations about the property. That's what as is does. Now, again, we knew this from the beginning. And we knew and we pled, and the complaint is written as if we can't get around as is. That's because as is applies where it applies. But it doesn't apply to the things we wrote about in the complaint. Can you just connect all those dots? Yes. So the client asks to see the property and I totally did not. They signed the agreement from which you just represented to Judge Branch. They then ask to see the property again and are denied. They then buy the property. And you're saying that, first, the health and safety issue, are you referring to the termite inspection or is there more? If we were talking about as is, if I was getting into, if I were trying to When you say health and safety, are you talking about the termite inspection or is there more? I'm really not even talking about health and safety as applicable. I understood your argument to say that as is doesn't matter when there's a health and safety issue. No, ma'am.   No, what I'm saying is this. As is overcomes the health and safety exception to caveat emptor. So you've got caveat emptor and it says the burden is on the buyer. Then you've got an exception to caveat emptor, which is the health and safety thing you're just talking about. Then you've got as is. And as is says that the health and safety exception to caveat emptor doesn't apply. How does that matter in this case? That's my whole point. Why are you talking about the health and safety exception not applying when you're not trying to travel under a health and safety exception? We're traveling under as is. Under Alabama law, as you have conceded, as is is big. It is a big concept. It is. And so we're just trying to figure out how you're suggesting that you have pleaded around it. Tell me how. Exactly. No, tell me how you have. Okay. You're just telling me how. Explain how you have. Okay. Let's look, let's start with, I'm going to go through the counts and explain that as instructed. Count five, deceit. Count five is, if you look at how you're supposed to plead deceit, you will see, look at paragraph 40 of the complaint, Al Code 2023-65104 requires that, or states that giving information of facts likely to mislead for want of communication of suppressed facts. So what is the deception that you are alleging when your clients were told this is Alabama, not Colorado, you can't do a walk-through? That's the deception. The deception we're talking about, count five, is they were provided a termite inspection at the closing. And the termite inspection said it had its set of what it said was wrong. There was another termite inspection obtained by the defendants that the plaintiffs paid them to obtain by Terminex, which contained substantially greater explanations and problems of what the termite. Do you agree that the first one did impose that there was a termite problem, correct? Not the one we, no. The one provided at the closing did not say that there was a termite problem. That's the one they didn't, the one they didn't get is the one that was, the one that the defendants literally obtained at the payment and, you know, we asked them to do it and paid them and they got a termite inspection from Terminex. The Terminex inspection was never given to us. So the claim for deceit is very simply that the termite inspection that was provided at closing didn't, you know, that wasn't the one that acknowledged or disclosed all the problems with the house. They just gave us another one. Okay, so let's assume that you had been given the termite report that showed the extensive damage at closing, that you got two, that you got the one that you wish you'd gotten. You have an as-is purchase agreement. Could you have gotten out of that purchase agreement? If you got the termite inspection at closing, you bought this house as-is, how does that change your client's ability at closing? Because they don't want the, we have the ability to not go through with the contract. So I was wondering if you were going to say that, because the sellers under the Section 3B of the purchase agreement are free to compel specific performance. You have bought a house, your clients have bought a house as-is. It's real property, and in the contract, the sellers can compel specific performance. You have not conditioned, your clients have not conditioned their purchase of this property on satisfying any inspections. I don't see how it changes the situation if you were to have received that second termite report at closing. Because as-is, it only applies to representations concerning the property. It applies to the health and safety. You said we're not talking about the health and safety. Because it seems like this is what's difficult for people to follow. We pled something that has nothing, the fact that they didn't provide us the termite inspection isn't, we're not saying that's a health and safety issue. It's not a health and safety issue. It's a, we relied on the, we relied on what was provided to us. We relied on a termite inspection that says it's just fine. And they hid from us a termite inspection that said the property had significant problems with it. And this whole as-is thing, the whole thing is just a complete red herring. Because what we're pleading of the contract, it's why you lost the loan. It's why we're struggling to understand your argument. So I think maybe on rebuttal, you need to help clarify things for us a little bit, or for me. I'll do it for myself. Thank you. Thank you, Mr. Sexton. Ms. Kronk, you may proceed. Mr. Sexton, you have three minutes for rebuttal.  Your Honors, may it please the Court, I'm Michelle Kronk for Regency Realty Incorporated, Regency Management Incorporated, Billy Cotter, and Evelyn Hetch. There's a lot of focus in the briefs and in the questions today about the as-is nature of the contract. But one thing that Judge Marks realized in her opinion below, and another reason why my clients should prevail, is the fact that the purchase agreement contains a release of all the claims against my clients. And regardless of the nature of the as-is contract, that release precludes any claims that have been brought by the plaintiffs. Well, let's say that, I mean, he talked about deceit, but let's say breach of contract, you have representations about the property, which some would say the as-is clause covers, and then you have representations about whether or not they could inspect the property. Do you not see those as two different things, or do you present them as one? Well, for the breach of contract claims specifically, the agency agreement is the only contract between my clients and the Austins, and the agency agreement doesn't provide that my clients are responsible for allowing an inspection. And in fact, the purchase agreement in Section 12B, had they had required or made their purchase contingent on an inspection, would have been the responsibility of the sellers, not my clients. As to representation in fraud claims, not the breach of contract claim, yes, the release in the purchase agreement is broad enough to include both, any representations about the ability to inspect the property and the condition of the property if you're getting to the termite issue. The release says that it releases from any claims arising from the sale of said property. That arising from language is interpreted very broadly in the state of Alabama and would include all of those claims. So one of the allegations in the breach of contract is that there is a provision in the agency agreement that states that Regency Realty is required by law to disclose any latent structural defect or any other defects known to it, but that is a dual agency provision, correct? Correct, and they were not. Yes, Your Honor. And, in fact, the plaintiffs admit that in their complaint. I believe it's paragraph 12 where they note that this is the buyer agent, and if you look at the purchase agreement, the box is selected for buyer's agent. So that language in the consensual dual agency agreement just simply doesn't apply. Let me ask you the same question that I asked opposing counsel. Say we're at closing and two termite reports are given to the Austins. Could they have avoided the purchase? Would the termite section have made a difference? The specific performance clause that I was referring to is 3B of the purchase agreement. 3B? I'm looking at, excuse me, at paragraph 14B with the wood infestation report. And then in paragraph 14B where the wood infestation report, and I would be remiss if I don't mention that the responsibility to provide these reports is on the seller, not my clients. But it does say that if they received a report that they didn't like, that it's incumbent on the seller to immediately treat and repair the same. And so they could have invoked that clause had they wanted to. Yes, I believe so. Thank you for bringing that to my attention. And I just want to quickly revisit the dual agency, because it seems like the way the law works there is that your client has more responsibility if they're serving as a dual agent, and less responsibility if they're just serving as an agent to the buyer. Is that correct? That's absolutely correct. I'm sorry, go ahead. I believe that's because you can impute the knowledge of the seller and the buyer to the agent since they're acting on behalf of both. But that's not what happened here. I would point... So the second termite report was ordered by your clients? No. So can you explain? I'm struggling with, first of all, as is house, and there were a lot of inspections done on it, the roofing, the plumbing, the termite. So I'm just trying to make sure that I understand why those inspections happened. But also, why two termite reports? I don't know the answer to why two termite reports, and frankly I don't know that it's relevant to this matter. I know that he alleges that both exist, but again the contract makes the responsibility of providing the wood infestation report one of the sellers. Notably, the sellers are not defendants here. That's not a responsibility of my client, whether it's one, two, three, or four. With regard to the other inspections that occurred, they were specifically written into the contract. If you look at paragraph 13, they required a sewer septic system inspection. And then at the back of the contract in paragraph 23, they add in an additional provision where they can add anything that they want, that there had to be a satisfactory roof inspection. So they read the contract and knew they were allowed to make whatever inspections that they wanted to contingent, and they specifically in paragraph 12, not only is this an as-is contract, but as-is not contingent on inspection. The agency agreement forewarned them that they should get an inspection. They didn't, which in and of itself for the breach of contract claims means that there was no performance by the plaintiff. Well, I'm just looking at paragraphs 14, 15, 16 of the complaint, and they say again that they demanded an inspection and were specifically told that they couldn't conduct one. Perhaps. But those both before and after are different than what they actually signed in the contract where they say that the sale of the property is not contingent on an inspection. They selected that themselves. Not contingent on an inspection, but they asked for an inspection and were told that they couldn't. So if they relied on that, it was a misrepresentation to their detriment. And I know we're talking about fraud and deceit, I mean deceit and breach of contract, but they also have a fraud claim as well. So how is that not a material misrepresentation that negatively impacted them to support that claim as alleged? Erin, I have two responses to that. One, again, the only document that creates any contractual duties for my client to the Austins is the agency agreement, and it does not require that my clients be the ones that permit inspection of the property or make the property available for inspection. But that's different than saying you can't inspect the property. But if they were to want to inspect the property, they are to go to the sellers. That's what the purchase agreement says. If they had selected in paragraph 12B that the property was going to be contingent on a home inspection, the paragraph above that in the bottom of 11 says that the seller will provide access and utilities for the buyers. Inspection is still closing. That's not a duty of my clients. Was the term damage visible such that if they had done a walk-through, they would have seen? Yeah, I don't know if it was or not. As to your second point, Judge Abudu, the as-is nature of the contract has more impact than just what Austin's counsel tries to narrow its impact, saying that it only removes the exceptions that are available under caveat inter. One of the other points of an as-is contract is that in Alabama, it removes the element of reliance for these fraud claims. And so the Austins can't have reasonably relied on any misrepresentations by virtue of selecting an as-is purchase. In addition to the fact that as-is removes the reasonable reliance element of any of the fraud claims, which include the misrepresentation, the suppression, and the deceit, when there's undisputed evidence that a party could have read any of the information that was available in the contract and didn't, that that can't be reliance. And here, not only does that apply to the as-is nature of the contract, but it also applies to the releases that are within the contract. And in several different parts of the purchase agreement, the Austins release from any liability, the broker and the agents. And that goes not only to the inspections, but also to any damage by the termites. Again, the release says that broker nor sales associate shall be bound by any representation concerning the property expressed or implied, not specified herein. Such a release has been upheld by Alabama courts before. There's no reason why it shouldn't in this case. If there are no further questions, I'll concede the rest of my time. Thank you. Mr. Sexton, you have three minutes for rebuttal.  Quickly back to the issue of could we, could the Austins have got out of the contract. Two responses to that. First, fraud vitiates a contract. Therefore, the things that we are alleging are fraud would permit us to not go through with the contract. Second, the other things that we have alleged in the contract, that we've alleged it, breaches of contract are first material, would be first material or first material breaches of the contract. Contract law has a doctrine that says the party that asserts the first, I mean that does the first material breach the contract is not permitted to assert the contract as defense to actions against it. So the doctrine of first material breach of the contract would preclude the defendant from enforcing the contract. So there's two ways that the plaintiffs don't have to go by the contract. Okay. Really quickly, what the claims are. We covered deceit, which is where you give information about what it literally says, given information of one set of facts while hiding another. Okay. Just think really quickly again about the termite inspection on that. They give evidence of one set of facts, which is the understated, misstated termite inspection, while concealing the second one. That's a classic claim for deceit. Okay. Next set of claims. I know you're familiar with it, but just to distinguish it again from the as is part. This is a fraud count about affirmative misrepresentations. What we say here, this is a count that we have pled that's talking about Ms. Hitch. Okay. These are things we say Ms. Hitch misrepresented. We say that Ms. Hitch represented that Regency refused to permit a walkthrough. We say Ms. Hitch represented that Regency claimed there was no access to it. We say that Ms. Hitch misrepresented what Regency's actual position was. Therefore, these are claims about representations made by Ms. Hitch about the things I just said. As is has nothing to do with these misrepresentations alleged by Ms. Hitch. And that's what the complaint says. The suppression claim. Suppression can be – well, I'm about out of time. Paragraph 35 tells you what our – says our suppression claims is that the defendants were aware that termite infestation in existing conditions. Didn't tell us they had legal and physical – they expressed that they actually did have legal and physical access to the property. And they, of course, suppressed the termite inspection report. Thank you. Thanks to both of you. We have your case under advisement.